BORDER BROKERAGE CO. *v.* UNITED STATES   (No. 5044)[1]

United States Court of Customs and Patent Appeals, June 2, 1961

*Barnes, Richardson & Colburn* (*Joseph Schwartz, Edward N. Glad, Norman C. Schwartz* and *Hadley S. King,* of counsel) for appellant.

*William H. Orrick, Jr.,* Assistant Attorney General, *Richard E. FitzGibbon,* Chief, Customs Section (*Richard H. Welsh,* trial attorney, of counsel) for the United States.

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Associate Judges. and Judge WILLIAM H. KIRKPATRICK.[2]

WORLEY, Chief Judge, delivered the opinion of the court:

This appeal is from the judgment of the United States Customs Court, Second Division, C.D. 2165, overruling the importer's protest and sustaining the collector's classification of relay valves and transfer chairs with chain as parts of machines not specially provided for under paragraph 372, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739. The importer contends the merchandise should be classified under the

---

[1] C.A.D. 774.

[2] United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge O'Connell,* pursuant to provisions of Section 294(d), Title 28, United States Code.

same paragraph but as parts of machines for making paper pulp or paper.

The pertinent provisions of paragraph 372, as modified by T.D. 52739, are as follows:

Machines, finished or unfinished, not specially provided for:

  *    *    *    *    *    *    *

Machines for making paper pulp or paper_____ 10% ad val.
  Other (except * * *) _____ 13¼% ad val.
Parts, not specially provided for, wholly or in chief value of metal or porcelain, of any article provided for in any item 372 of this Part:

  *    *    *    ✢    *    *    *

Other_____ The rate for the article of which they are parts.

As modified by T.D. 54108:

Machines, finished or unfinished, not specially provided for:

  ✣    *    ✣    *    ✣    *    ✣

Combination candy cutting and wrapping machines; machines for making paper or paper pulp, machines for packaging pipe tobacco; machines for wrapping candy; and machines for wrapping cigarette packages_____ 8½% ad val.

  *    ✣    *    *    *    *    *

Other (except * * *) _____ 11½% ad val.
Parts, not specially provided for, wholly or in chief   The rate for the
value of metal or porcelain, of any article provided   article of which
for in any item 372 in this Part.         they are parts.

The only witness called was the office manager of a company manufacturing machinery for pulp mills, saw mills, and plywood plants, who appeared for the importer. His testimony is to the following effect:

The chairs, chains and valves are used on mechanical whole log debarkers which are sold to "some pulp mills and mostly saw mills." The function of the chairs and chains is to help direct the logs and carry them through the machine, while the valves serve to regulate the pressure applied in debarking the logs. The logs are debarked in lumber mills so that the waste pieces which are removed from the logs, when they are squared into boards, may be sold to pulp mills for use in making paper pulp. If the waste pieces are not intended for such use the bark is not removed.

This appeal presents two issues, first, whether whole log debarkers are "machines for making paper or paper pulp" within the meaning of paragraph 372, as modified; second, whether the instant articles are parts of such debarkers in the tariff sense. The Customs Court found it necessary to pass only on the first question since it found that the debarkers are used in the lumber industry to prepare material which can be used in pulp making, and found their use "so remote

from the operations of a paper or pulpmill as to preclude classification of the subject merchandise as parts of machines for making paper or paper pulp."

In contending that the Customs Court erred in that finding, the importer points out that the provision for machines for making paper and paper pulp was inserted in paragraph 372 as the result of a trade agreement, and that the report prepared by the United States Tariff Commission in explanation of that agreement states that such provision was intended to include "barkers * * * for preparing the wood" used in making or processing the pulp. The quoted language indicates that machines for removing bark from logs *may* be classified as pulp making machinery. However, as pointed out by the Customs Court, the Tariff Commission explanation also states that "The classification does not include sawmill machines such as slashers, log conveyors, etc., and other machines which *though used in pulp mills have a more general use in the lumber and wood-using industries.*" (Emphasis added.) Accordingly, log debarkers which have such a general use in the lumber industry are not properly classifiable as pulp making machinery.

In our opinion the record supports the finding that the chief use of the instant debarkers is in the lumber industry where they serve to convert the waste pieces which are removed in squaring the logs into a by-product which may be sold to pulp mills. We agree with the Customs Court that such use is too remote to permit classification of the debarkers as pulp making machinery. As was said in *United States* v. *Frank P. Dow Co., Inc.,* 29 CCPA 48, C.A.D. 169, "We know of no sound holding that a machine which merely makes the material that later is used by another machine is part of the latter."

Moreover, the record fails to establish that the instant valves, chairs, and chains are used exclusively, or even chiefly, in whole log debarking machines. As was brought out on cross examination, valves of the instant type have a wide variety of uses in pulp mills, steel mills, and pipe mills. While the witness stated that he had not seen these particular valves used on anything other than whole log debarkers, there is no apparent reason why they could not be used elsewhere if the pressures to be maintained corresponded to those for which the valves were designed. It does not appear that the witness had any extensive familiarity with steel or pipe mills, and the mere fact that he had not seen the particular valves involved here used in such mills does not establish that they are not so used.

With respect to the chairs and chains, the witness testified that he had never seen them used with any type of machine "other than a debarker." He stated, however, that there are three or four types of

debarkers, one of which is used in the veneer industry. His testimony, therefore, does not satisfactorily show that even the chief use of chairs and chains is in whole log debarkers.

On the record here we are not convinced that the Customs Court erred in holding that—

It is clear from the evidence in this case that the debarkers for which the subject articles were imported are chiefly used by sawmills, and that their primary purpose is to eliminate sawmill waste. That the incidental result of such operations is the production of a material suitable for use in the manufacture of paper or pulp, is insufficient to characterize the machine itself as designed for that ultimate purpose. Under the circumstances described in this record, it would seem that the process of debarking whole logs in the lumber industry is so remote from the operations of a paper or pulpmill as to preclude classification of the subject merchandise as parts of machines for making paper or pulp.

The judgment is *affirmed*.

MARTIN, Judge, concurs in the result.